**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:14-CR-31-HAB |
| | ) | |
| JUAN SOSA | ) | |

**OPINION AND ORDER**

On July 22, 2020, the Court received a letter from Defendant Juan Sosa requesting compassionate release as a result of the COVID-19 pandemic (ECF No. 40). The matter was referred to the Federal Community Defender who entered her appearance on August 10, 2020. The FCD filed a sealed Brief in Support of Motion for Compassionate Release (ECF No. 49) on August 25, 2020. The Government filed its Response (ECF No. 53) on September 15, 2020, and Defendant has filed a Reply (ECF No. 54). This matter is now ripe for review.

**A.      The Conduct of Conviction**

On July 23, 2014, Defendant was charged in a five count indictment alleging four counts of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of distribution of a Schedule II controlled substance in violation of 18 U.S.C. § 841(a)(1). This indictment arose out of three different transactions with a confidential informant, two of which involved the sale of guns (six guns in total) and one involving the sale of drugs (approximately one gram of methamphetamine and one ounce of cocaine). Defendant pled guilty to a single count of being a felon in possession of a firearm and was sentenced to a term of 100 months' imprisonment.

Defendant is currently serving his sentence at FMC Lexington in Lexington, Kentucky. His anticipated release date is November 3, 2021.

**B.**     **Legal Analysis**

**1.**     *Extraordinary and Compelling Circumstances*

Defendant's filings request a sentencing modification. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which permits the court to reduce a sentence based on a retroactively applicable amendment to the sentencing guidelines that lowers the defendant's guideline range. 18 U.S.C. § 3582(c)(2). Another allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A).

Defendant seeks compassionate release pursuant to § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Defendant, not the Director of the BOP, filed the motions, he must first demonstrate that he meets the statutory exhaustion requirement to proceed further. The Government concedes that Defendant requested release from his warden and that more than thirty days have elapsed since the request. Therefore, the Court finds that administrative remedies have been exhausted in this case.

Defendant, now 52 years old, alleges that he suffers from several medical conditions that warrant compassionate release. These conditions include Type II Diabetes, hyperlipidemia, obesity, hypertension, atherosclerosis coronary of native coronary artery – with a history of angioplasty in 2008 and 2014, Vitamin D deficiency, asthma, and calculus of ureter. Defendant was also admitted to the hospital on August 10, 2017, with respiratory failure and placed on a ventilator. Defendant's fellow inmates advised that Defendant had smoked synthetic marijuana immediately prior to his respiratory failure. Defendant denies drug use and notes that there was no positive toxicology screen during his hospitalization. Defendant is currently prescribed eleven medications to treat his medical conditions.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §

1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

Beyond question, Defendant has several medical conditions that put him at an increased risk for a negative prognosis should he contract COVID-19. Defendant's obesity, heart condition, and Type II diabetes all put him at increased risk of severe illness from COVID-19.[1] Defendant's asthma and hypertension might put him at an increased risk.[2] It is undisputed, then, that Defendant is at a greater risk than most of the BOP population for severe illness or death should he contract the virus.

Moreover, and contrary to the representations of the Government, it does not appear that Defendant's conditions are well-controlled. The Government notes that Defendant's most recent A1c result puts him 0.1 below diabetic, evidence that at least this condition is being addressed by

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[2] *Id.*

4

the BOP. But the same cannot be said for his heart condition, perhaps the most troublesome diagnosis from a COVID complications standpoint. Only four months ago, Defendant was taken to the hospital with chest pains. An EKG at the hospital showed an inferior myocardial infarction. A subsequent EKG in July 2020 was abnormal, suggesting a later ischemia. Given Defendant's history of heart attacks, the Court finds these recent abnormal heart studies concerning.

The Court is also concerned with Defendant's lung function. Three years ago, Defendant was placed on a ventilator after suffering acute respiratory failure. As Defendant points out, the use of a ventilator alone poses significant health threats for him going forward.[3] True, Defendant's fellow inmates blame his condition on illicit drug use, but there is no objective evidence to back their account. The Court, then, views this incident as evidence of a progression on Defendant's prior lung issues.

Defendant does have the benefit of being housed in a facility where COVID is not widespread. As of the date of this Opinion and Order, only six inmates and no staff were reported as having confirmed cases of COVID-19.[4] FMC Lexington, however, has not been spared from the outbreak, recording 222 positive tests since the outbreak began. This represents a positive test rate of more than 20%, or more than 4 times what the World Health Organization recommends before municipalities should consider easing restrictions.[5] FMC Lexington may not be the worst facility in the BOP in terms of the pandemic, but the Court hesitates to call the facility safe. *See, Melgarejo*, 2020 WL 2395982, at *3 ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of

---

[3] Jeremy R. Beitler, *Ventilator-Induced Lung Injury*, Clin Chest Med. 2016 Dec; 37(4): 633–646, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5131805/
[4] https://www.bop.gov/coronavirus/
[5] https://coronavirus.jhu.edu/testing/testing-positivity

COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus.").

Finally, the Government argues that Defendant is capable of self-care, and therefore cannot meet the requirements for compassionate release. The Court has held in the past that the ability to self-care can defeat a claim for compassionate release. *United States v. McCloud*, 2020 WL 5406182 at *3 (N.D. Ind. Sept. 9, 2020). However, the Court emphasizes here that Defendant's medical conditions have rendered him unable to care for himself at least twice in the recent past, both times requiring his hospitalization. While Defendant may be able to provide self-care today, there is no guarantee that he will be able to do so tomorrow. Accordingly, the Court finds that Defendant's medical conditions present extraordinary and compelling reasons for release.

**2.      *§ 3553(a) Factors***

The Court further concludes that the § 3553(a) factors support release. Defendant's conduct was serious; even he concedes this. Defendant engaged in multiple, illegal transactions involving guns and drugs. He deserved, and received, an extended period of incarceration in a federal prison.

That said, there is nothing in Defendant's past that indicates that he should risk death as a consequence for his crime. The Government makes much of Defendant's criminal past, but his criminal history category was IV, far from the worst the Court has seen. In addition, Defendant's conduct leading up to sentencing demonstrated his desire to leave his criminal associations behind. Finally, Defendant has served most of his term of imprisonment, with little more than 12 months remaining. The Court finds that his release on compassionate grounds will not undermine the purposes of sentencing.

The Court is mindful of the Government's arguments regarding Defendant's discipline while incarcerated (which was relatively minor) and his history of violating supervised release

conditions. However, the § 3553 analysis is necessarily a balancing act. Defendant's prior bad acts are somewhat attenuated temporally and, in the Court's view, do not outweigh the danger posed by the coronavirus. When the balancing act is performed in this case, it weighs in favor of release.

**C.      Conclusion**

For the foregoing reasons, Defendant's requests for compassionate release (ECF Nos. 40, 49) are GRANTED. His previously imposed sentence of imprisonment of 100 months is reduced to time served.

This order is stayed for up to fourteen days, for the verification of Defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure his safe release. Defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure his safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

Defendant's previously imposed term of supervised release remains unchanged. The Court will add as a condition of supervised release that his term of supervised release be served on home detention. Amended Conditions of Supervised Release will be issued consistent with this Opinion and Order.

SO ORDERED on October 7, 2020.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT